IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                          Case Nos.:  5:11cr46/MW/EMT
                                                          5:15cv146/MW/EMT

SARA MARI HOEHN

---

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant Sara Mari Hoehn's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 122).   The Government filed a response (ECF No. 131), and Hoehn filed a reply, as well as two notices of supplemental authority (ECF Nos. 133, 140, 141).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a review of the record and the arguments presented, the undersigned concludes that Hoehn has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## PROCEDURAL BACKGROUND

On December 13, 2011, a grand jury returned an indictment charging Sean Lamar Rainer and Sara Mari Hoehn with conspiracy to manufacture and possess with intent to manufacture and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine ("Count One"); manufacture and possession with intent to manufacture and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine between August 28 and September 1, 2011 ("Count Two"); and possession of a firearm in furtherance of a drug trafficking crime ("Count Three") (ECF No. 1).    Sean Lamar Rainer was also charged in a fourth count with possession of a firearm by a convicted felon.

Hoehn and Rainer were arrested on September 1, 2011, as a result of a tip provided to the Bay County Sheriff's Office that two armed individuals were cooking methamphetamine in a motel room in Panama City, Florida (ECF No. 88, PSR ¶ 9).    Investigators knocked on the door to the room, and when co-defendant Rainer opened the door, holding a gun, they were met with a cloudy haze and a strong odor and fumes associated with an active methamphetamine lab.    Four bottles were actively cooking at the time.    Law enforcement recovered items

including plastic bottles used as cooking vessels, items used for the "shake and bake"
method of manufacturing methamphetamine, allergy pills containing
pseudoephedrine, and a pink plastic container holding syringes marked "Sara's."
Officers also recovered a pink overnight bag that held a notebook containing
instructions on how to manufacture methamphetamine.    More than 700 grams of a
mixture and substance containing methamphetamine were seized from the motel
room.

Assistant Federal Public Defender Michelle Spaven took over Hoehn's
representation from AFPD Charles Lammers and represented her at trial (ECF No.
50).    After a two-day trial at which neither Hoehn, nor any other witness for the
defense testified, the jury found Hoehn guilty as charged.    It also specifically found
that the offense conduct involved 500 grams or more of methamphetamine as was
charged in the indictment[1] (ECF No. 74).    Co-defendant Rainer entered a guilty
plea and did not testify at Hoehn's trial (ECF Nos. 26–28; ECF No. 101 at 21).

The Presentence Investigation Report ("PSR") assessed Hoehn's base offense
level at 32 based on a finding that she was accountable for 734.2 grams of a mixture

---

[1] The jury found that the offense conduct in Count Three involved only the sawed off shotgun and
not the pistol that was in Rainer's hand when he opened the door to law enforcement (ECF No.
74).

and substance containing methamphetamine (ECF No. 88, PSR ¶¶ 14, 22).[2]     After

a three-level upward adjustment pursuant to § 2D1.1(13)(C), due to the substantial

risk of harm to human life or the environment, Hoehn's total offense level was 35

(PSR ¶¶ 23–30).     Although she had a minimal criminal history, Hoehn's criminal

history category was II because she had committed the instant offense while under

a criminal justice sentence for a 2011 theft conviction (ECF No. 88, PSR ¶¶ 33–37).

A ten-year minimum term of imprisonment applied to all three counts.

Additionally, the term of imprisonment as to Count Three had to be imposed

consecutively to any other counts (ECF No. 88, PSR ¶¶ 69–70).     Therefore,

although the applicable advisory guidelines range was 188 to 235 months, Hoehn's

total guidelines range after including the consecutive minimum ten-year term on

Count Three was 308 to 355 months (ECF No. 88, PSR ¶ 71).

As to Hoehn's personal history, the PSR reflected that she and co-defendant

Rainer had been in a romantic relationship for eighteen months and had a daughter

who was born on January 25, 2007 (ECF No. 88, PSR ¶ 49).     According to Hoehn's

mother, Rainer was abusive to Hoehn during the course of that relationship (PSR ¶

---

[2] Co-defendant Rainer was also held accountable for 734.2 grams of a mixture and substance
containing methamphetamine (ECF No. 80, Rainer PSR ¶ 23).

Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT

49).    Hoehn had another daughter, born November 20, 2009, with Donnie Smith, with whom she was in a relationship for four years (PSR ¶ 50).    She and Smith had been living with his parents, who were the victims of the earlier theft, and Smith and the couple's daughter continued to reside with Smith's parents after Hoehn's arrest (PSR ¶¶ 33, 50).    Hoehn also had a third child, born in 2004, from a relationship before she met Rainer.

At sentencing, the court overruled the defense objection to the three-level adjustment for the substantial risk created by the offense conduct (ECF No. 103 at 3–13).    It also overruled the request for a minor role adjustment, finding that Hoehn was an active participant in the cooking that was taking place in the hotel room (ECF No. 103 at 13–14).    The court sentenced Hoehn to a total term of 331-months imprisonment, which was comprised of concurrent terms of 211-months imprisonment on Counts One and Two, followed by the consecutive mandatory minimum 120-months imprisonment on Count Three (ECF No. 103 at 18–19). Hoehn was also ordered to pay restitution jointly and severally with co-defendant Rainer in the amount of $10,576.02 to the owner of the hotel and its insurance company for damage to the room (ECF No. 103 at 20).[3]

---

[3] Rainer, who had a total offense level of 32 and a criminal history category of III, was originally Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT

Hoehn raised two issues on appeal, which were ultimately unsuccessful (ECF No. 108).   She first claimed that the district court erred in denying her motion for judgment of acquittal on Count Three, because she did not actively possess the shotgun found in the hotel room and, she argued, the evidence was insufficient to show that she constructively possessed it.   The Eleventh Circuit disagreed (ECF No. 108 at 2–5).   Hoehn also challenged, for the first time, the quantity of drugs attributed to her.   The appellate court found no plain error and affirmed (ECF No. 108 at 5–9).

While the instant motion to vacate was pending, the district court reduced Hoehn's total term of imprisonment from 331 to 289-months imprisonment as a result of Amendment 782 to the Sentencing Guidelines, pursuant to 18 U.S.C. § 3582 (ECF Nos. 111, 125, 126).

In the present motion, Hoehn separates her claims into eight often overlapping claims for relief, each assailing some aspect of trial or appellate counsel's performance.   The Government opposes the motion in its entirety.   Hoehn has also filed two addenda to her motion, citing more recent authority.

---

sentenced to a term of 289-months imprisonment (ECF Nos. 80, 82, 83).   His sentence was later reduced pursuant to Amendment 782 to a total term of 256-months imprisonment (ECF Nos. 120, 121, 127).

Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT

# ANALYSIS

## General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.

*Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  *Nyhuis*, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court

may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that she is "actually innocent."   *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   *Lynn*, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that she was prejudiced by this inadequacy.   *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390

(2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry her burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."    *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).    Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."    *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and

without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show

counsel's performance was unreasonable, a defendant must establish that "no

competent counsel would have taken the action that his counsel did take."   *Gordon*

*v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*,

218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be

unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218 F.3d at 1314.

When reviewing the performance of an experienced trial counsel, the presumption

that counsel's conduct was reasonable is even stronger, because "[e]xperience is due

some respect."   *Chandler*, 218 F.3d at 1316 n.18.

        To establish prejudice, defendant must show that, but for counsel's deficient

performance, the outcome of the proceeding would have been different.

*Strickland*, 466 U.S. at 694.    "The likelihood of a different result must be

substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S. 86, 112 (2011)

(quoting *Strickland*).    For the court to focus merely on "outcome determination,"

however, is insufficient; "[t]o set aside a conviction or sentence solely because the

outcome would have been different but for counsel's error may grant the defendant

a windfall to which the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S.

364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir.

2010).    A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."    *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).    Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.    *Glover v. United States*, 531 U.S. 198, 203–04 (2001).    A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."    *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for her contentions regarding counsel's performance.    *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)). This is true regardless of whether the issue is a trial or sentencing issue. *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v.*

*Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT

Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of her constitutional rights based on her attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might have helped her case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true, would prove she is entitled to relief.   *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported

generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Ground One – <u>Failure to Investigate Witnesses</u>

Hoehn contends that trial counsel was constitutionally ineffective because she did not call an expert witness to testify about "drug quantity and the process of manufacturing" or with respect to "Battered Women's Syndrome" (ECF No. 122 at 4).   According to Hoehn, such a witness or witnesses would have proven that the amount of methamphetamine was exaggerated and that Hoehn was under duress.

First, Hoehn asserts that the quantity of drugs recovered by law enforcement from the motel room would not have been 500 grams or more of methamphetamine, if only the finished, usable product was considered.

The Sentencing Guidelines differentiate between "methamphetamine," which designates a mixture and substance containing methamphetamine, and actual methamphetamine.   Equivalent offense levels are applied to, for instance, conduct involving at least 500 grams but less than 1.5 kilograms of a mixture or substance containing methamphetamine, and conduct involving only 50 to 150 grams of

"actual" methamphetamine, that is, methamphetamine of a certain purity.    *See, e.g.*,

U.S.S.G. § 2D1.1(c)(5).    Hoehn offered no evidence or argument with respect to

how much "actual" methamphetamine she believes the mixture or substance seized

from the active cook could have produced.    And in any event, the appropriate base

offense level was applied based on the weight of the mixture or substance involved

in this case.

Investigator Gary Schell of the Bay County Sheriff's Office testified that

based on his training and experience, he was 100% certain that law enforcement

recovered close to 1000 grams of a mixture containing methamphetamine from the

hotel room (ECF No. 102 at 37, 43–44).    Law enforcement sent approximately 460

grams of the mixture to the FDLE lab for confirmation of their field testing (ECF

No. 102 at 29–37; ECF No. 101 at 79–82).    The rest of the substance was destroyed

in accordance with OSHA regulations (ECF No. 102 at 37).    Both Schell and

Jeremiah Bortle, a chemist with the FDLE crime laboratory, testified that the

methamphetamine was still in the process of being manufactured and was not in its

final form (ECF No. 101 at 83; ECF No. 102 at 39–40).    However, absent law

enforcement intervention it could have been used to complete the process and obtain

the final methamphetamine product (ECF No. 101 at 84).    Also, Schell testified that

such mixtures could be poured through coffee filters and ingested, although this was less common (ECF No. 102 at 40).    The fact that the liquid was "usable," even if that was not the way it was typically marketed, meant that the entire weight was properly considered for sentencing purposes.    *Griffith v. United States*, 871 F.3d 1321, 1334–35 (11th Cir. 2017) (citing *United States v. Grant*, 397 F.3d 1330, 1332, 1336 (11th Cir. 2005)).

The Eleventh Circuit found that there was no plain error in the calculation of the quantity of methamphetamine attributable to Hoehn.    *See* ECF No. 108 at 5–8; *see also Griffith*, 871 F.3d at 1337 (noting that the third prong of the plain error rule requires that a defendant show a reasonable probability that but for the error, the outcome of the proceeding would have been different, which is the same one a defendant must make to establish prejudice under *Strickland*) (citing *Molina-Martinez v. United States*, 578 U.S. ___, 136 S. Ct. 1338, 1343 (2016); *Strickland*, 466 U.S. at 694).    Hoehn has not shown that counsel was constitutionally ineffective for failing to call an expert witness regarding the drug quantity.

Next Hoehn argues that counsel should have called an expert witness to testify about Battered Women's Syndrome.    Battered Woman Syndrome is a set of psychological and behavioral reactions exhibited by victims of severe, long-term,

domestic physical and emotional abuse.    *See United States v. Johnson*, 956 F.2d 894, 899 (9th Cir. 1992) (citing L. Walker, The Battered Woman Syndrome (1984)). It is not a mental disease or defect; rather, it is a post-traumatic stress disorder.    *Id*. Battered Woman Syndrome is often characterized by learned helplessness which keeps the battered woman from leaving the batterer.    *Id*.    This syndrome is sometimes referred to as Battered Spouse Syndrome.    *See* Fla. R. Crim. P. 3.201 (referring to it as such).    Neither label is all encompassing, as the syndrome is not limited to marital relationships or to those with men as the batterers.    The defense is generally seen in cases in which a female defendant is accused of a violent act against an individual, typically the alleged batterer, or less frequently to explain the victim's joint or other participation in unlawful conduct.    *See Dixon v. United States*, 548 U.S. 1 (2006); *Moran v. Ohio*, 469 U.S. 948 (1984); *United States v. Word*, 129 F.3d 1209 (11th Cir. 1997) (fraudulent securities scheme); *Dando v. Yukins*, 461 F.3d 791 (6th Cir. 2006) (robbery); *Daniels v. Henry*, No. C-03-5293 VRW, 2007 WL 424441 (N.D. Cal. Feb. 5, 2007), *aff'd* 281 F. App'x 663 (9th Cir. 2008) (defendant and alleged batterer charged with homicide of one child and felony child endangerment of a second).

In this case, Hoehn claims that she was "nothing more than a drug addict in the room with her abusive boyfriend who used her addiction as a means of control" (ECF No. 133 at 2), and that there was "ample evidence" to prove that she was a victim rather than a participant.    In support of this claim, she has submitted a Bay County Sheriff's Office Offense/Incident Report reflecting that on April 18, 2006, almost five and a half years before her arrest in this case, she was the victim of a domestic battery in which co-defendant Rainer was the assailant (ECF No. 133 at 5–7).    Rainer pleaded nolo contendere on April 19, 2006, was sentenced to one year of probation, and ultimately served two months in jail after violating his probation (ECF No. 80, Rainer PSR ¶ 37).

This information alone proves nothing more than a single instance of battery, and is not persuasive with respect to Hoehn's state of mind at the time of the offense conduct in this case, more than five years later.    Additionally, the record reflects that between the domestic violence incident and the instant offense, Hoehn had a four-year relationship with another man, Donnie Smith, and gave birth to his child (ECF No. 88, PSR ¶ 50).

Moreover, as the Government notes, Hoehn's behavior after her arrest was inconsistent with someone who feared her co-defendant or believed herself to be

innocent.    Hoehn's phone calls to her mother from the jail were recorded.    During these conversations, she never claimed to have been abused by Rainer, and never denied her involvement (ECF No. 102 at 81–84).    In fact, in one early conversation Hoehn was focused on how she and Rainer had been apprehended and asked her mother whether she had "snitched" on Hoehn (ECF No. 102 at 86).    Defense counsel alluded to the "duress" of domestic violence (*see, e.g.,* ECF No. 101 at 107), but the record as a whole lacks support for a Battered Woman Syndrome defense.

Hoehn also maintains that counsel was constitutionally ineffective because the jury was never privy to the fact that Hoehn's fingerprints were not on the gun, shells, or methamphetamine lab equipment (ECF No. 133 at 2).    She is largely mistaken.

Investigator Nicholas Vanstrander testified that the sawed-off shotgun was not submitted to the crime lab for DNA samples or fingerprints, and explained that because of the location of the gun and the defendants in the room, he did not believe there would be an issue with any kind of possession (ECF No. 101 at 65–66). Regardless of whether Hoehn's fingerprints were on the weapon, her proximity to it, as well as the fact that she and Rainer were the only two people in the room, could support a finding that she constructively possessed the weapon.    The jury heard that

the box of gun shells was tested for fingerprints but did not have any latent fingerprints, of either Hoehn or Rainer (ECF No. 102 at 52–53).    The jury also learned that Hoehn's fingerprints were recovered from a notebook containing instructions on how to make methamphetamine (ECF No. 102 at 48–51).    Hoehn appears correct that there was no testimony linking her fingerprints to the methamphetamine operation.    However, Agent Langley testified that due to the nature of the cook operation, with multiple bottles cooking at once, it was obvious to him that the methamphetamine lab discovered in the hotel room was "not a one-person lab," and that at a minimum there were two people involved (ECF No. 102 at 70).

Hoehn's claims in ground one must fail, as she has shown neither constitutionally deficient performance, nor prejudice.

Ground Two—Failure to Call a Handwriting Expert

Hoehn next contends that counsel was constitutionally ineffective because she did not secure a handwriting expert to analyze the handwriting in the notebook seized at the scene.    Such an analysis, Hoehn contends, would have shown that the handwriting for the methamphetamine recipe belonged to a man.    Even if her conclusory assertion is true, it does not establish that the outcome of the proceedings

Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT

would have been different, in light of the abundant evidence presented against her at trial.

Hoehn also reiterates her claim that an expert on Battered Woman Syndrome would have shown that she was a victim and not a participant. She offers nothing in support of her assertion other than the conclusory and unsupported statement that she "was being abused and was afraid of Mr. Rainer and did as he told her" (ECF No. 122-1 at 3). Again, the record taken as a whole does not support Hoehn's assertion that her participation in the methamphetamine lab was a result of Battered Woman Syndrome. She has not shown that counsel was constitutionally ineffective as to Ground Two.

### Ground Three—Failure to File a Motion to Suppress

Hoehn's third ground for relief is titled "Motion to Suppress Evidence" (ECF No. 122 at 7). The arguments contained in support of this ground go to the weight of the objectionable evidence rather than its admissibility. Hoehn maintains, for instance, that the evidence used to link her to the manufacturing of the methamphetamine should have been suppressed because her fingerprints were not found on the lab. She also suggests that her innocence is proven because she did

Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT

not purchase pseudoephedrine during the time frame of the conspiracy.[4]    She

claims that the instructions for making methamphetamine that were found in the

hotel room were neither in her notebook nor in her handwriting.    Finally, Hoehn

claims that other than her physical proximity to the gun, there was no evidence

linking her to the weapon, as she had neither touched it nor had any intention to do

so.    Counsel is not constitutionally ineffective for failing to move to suppress any

of the aforementioned evidence, as there was no basis for doing so.

 Ground Four – <u>Failure to File Motion to Introduce Evidence</u>

 Hoehn notes that the only evidence presented in this case was presented by

the prosecution.    She claims that if all of the information in the notebook identified

as hers had been introduced at trial, the court would have found that she "was in fear

for her life, was an addict and had no knowledge of the gun nor was she ever in

possession of it" (ECF No. 122 at 8).

 The admissibility of the contents of the notebook was the subject of

considerable discussion during the trial proceedings (ECF No. 101 at 15–20, 99–

110).    The Government sought to introduce pages containing handwritten notes on

---

[4] The Government noted outside the presence of the jury that within a month preceding the date of
the conspiracy Hoehn's attempt to purchase pseudoephedrine was rejected because this purchase
would have exceeded the amount allowable by law (ECF No. 101 at 9).

the supplies needed to manufacture methamphetamine, the "how-to list" describing how to manufacture methamphetamine, and a third page from which investigators had lifted a latent print belonging to Hoehn.   Other pages included what the court described as "stream of consciousness" writing to or about Hoehn's mother, and a letter to a romantic partner.   Contrary to what Hoehn now suggests, the defense argued repeatedly, albeit unsuccessfully, that the entire notebook should be admitted into evidence.

Defense counsel maintained that the full notebook could have a bearing on whether Hoehn willfully conspired to participate in the offense conduct. Specifically, there was a letter that appeared to be directed to co-defendant Rainer in which Hoehn wrote, "The other day broke my heart.   I'm afraid to even talk to you anymore.   I never thought you would try to kill me, hurt me, but now I believe you would if you wanted to." (ECF No. 101 at 100).   The defense argued that the letter tended to show that Hoehn was under the duress of domestic violence.   The Government objected that introduction of the evidence would be a way of "back-dooring hearsay into this trial."   It noted that Hoehn could personally take the witness stand to testify about her addiction or about the allegedly abusive relationship with Rainer.   Alternatively, she could call other witnesses who might

have observed her addiction and her abusive relationship with Rainer.    The court countered that the letter did not identify the person to whom it was directed, and Hoehn's reference to being someone's "baby mama" was not entirely probative because she had children with two other men (ECF No. 101 at 107).    It also noted that Hoehn's "stream of consciousness" writing about her mother was irrelevant to the charges in the case.    Only the three pages identified above were introduced at trial (ECF No. 102 at 2–5).

Hoehn's attorney made essentially the same arguments Hoehn now makes in favor of the admission of the entire notebook.    The fact that the arguments were not accepted by the court does not render counsel's performance constitutionally deficient.    She is not entitled to relief on this ground.

Ground Five—<u>Failure to Object</u>

Hoehn contends that counsel was ineffective because she did not object to the quantity of drugs attributed to her client.    As noted above, the undisputed testimony at trial from an officer who was well experienced in dealing with methamphetamine labs was that law enforcement recovered nearly 1000 grams of a mixture or substance containing methamphetamine. This testimony, along with the investigator's uncontroverted opinion that the substance was "usable," supported the

quantity of methamphetamine attributed to Hoehn in the PSR.    Hoehn has not shown that counsel could have made a viable objection, and counsel was not ineffective for her failure to make a meritless one.

Hoehn also raises, again, the issue of the lack of fingerprints on the gun.    This is a matter of argument, not objection.    Counsel did include this issue in her closing argument (ECF No. 102 at 126).    However, the lack of fingerprints on the weapon has no bearing upon whether Hoehn "constructively" possessed the weapon under the law.    The jury was instructed about both actual and constructive possession and found Hoehn guilty (ECF No. 102 at 146).    Counsel was not constitutionally ineffective.

Ground Six—"Defense Related"

Hoehn argues that her Sixth Amendment rights were violated because counsel did not have a defense strategy and did not call witnesses on her behalf to prove her innocence.    She appears to suggest in her reply that the reason for her presence in the hotel room was her involvement with an abusive boyfriend who used her addiction as a means of control.    She offers only two items of evidence to support her claim of being in a relationship with an abusive boyfriend.    First is the letter she wrote in her notebook referencing an unidentified boyfriend allegedly trying to

kill or hurt her.   Second is law enforcement's report of the 2006 domestic battery

incident.   As discussed previously, neither of these documents would "prove" that

Hoehn was suffering from Battered Woman Syndrome at the time of her arrest or

excuse her involvement in the conspiracy.   Furthermore, Hoehn identifies neither

any exculpatory witnesses who could have testified in her behalf, nor the testimony

they might have offered, which would have altered the outcome of the proceedings.

At risk of being redundant, the court notes that the evidence against Hoehn

was strong.   She and Rainer were apprehended inside a motel room with an active

methamphetamine lab that, according to one law enforcement officer, was at least a

two-person operation.   The jury heard Hoehn's phone calls to her mother and the

statements she made during those calls, which statements supported the inference

that she was actively involved in the conspiracy (ECF No. 102 at 83–84).   For

example, she told her mother that "we [meaning Hoehn and Rainer] were cooking"

rather than placing the blame on Rainer, and she said "[t]hey're just catching us

now."   There was never any suggestion by either the Government or the defense

that anyone else was involved with the "shake and bake" operation in Hoehn and

Rainer's room at the Microtel motel.

Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT

Hoehn also suggests that the fact that she was not mentioned in a Crime Stoppers tip about Rainer being involved in a methamphetamine lab establishes her innocence (ECF No. 133 at 8).   She claims "just because I walk into a McDonalds doesn't mean I am making the French fries" (ECF No. 133 at 2–3).   Her logic is mistaken.   First, the report to which Hoehn refers was taken on August 11, 2011, and it involved a different hotel from the Microtel in which Hoehn and Rainer were apprehended.[5]   The co-defendants' apprehension was based on a tip received by the Bay County Sheriff's Office on September 1, 2011, that "two individuals armed with a handgun and a shotgun" were cooking methamphetamine at the Microtel in a motel room (ECF No. 88, PSR at ¶ 5; ECF No. 101 at 40).

Hoehn has not carried her burden under *Strickland* of showing that counsel's performance was constitutionally deficient.

Ground Seven — <u>Closing Argument</u>

Hoehn argues that counsel was constitutionally ineffective because she failed to lodge a "sufficient" objection to the Government's exaggeration of the situation and the amount of methamphetamine in the hotel room.   A review of the transcript

---

[5]  Although it was not introduced at trial, the Government had proof that Hoehn had unsuccessfully attempted to purchase pseudoephedrine in August of 2011 (ECF No. 101 at 9).

reveals that there was no basis for counsel to object to the Government's closing argument, as it was not improper.    Counsel was not constitutionally ineffective.

Ground Eight—"<u>Appellant Brief</u>"

Hoehn's final ground for relief appears to be that a miscarriage of justice occurred on appeal when AFPD Chet Kaufman, who initially filed an *Anders* brief, continued to represent her after the Eleventh Circuit denied his motion to withdraw. Hoehn does not identify how she was prejudiced by counsel's continued representation, as she has failed to identify any viable claims for relief that could have been raised on appeal.    No relief is warranted on this claim.

<u>Addendum to § 2255 motion</u>

Hoehn has submitted two addenda to her § 2255 motion.    In the first addendum, she cites *Dean v. United States,* 137 S. Ct. 1170 (2017) (ECF No. 140) (finding that a judge may consider the length of the sentence under a statute such as § 924(c) that requires a consecutive sentence when deciding on the appropriate length of other components of a sentencing package).    She appears to seek a remand for resentencing "so the district court [can] consider" the mandatory consecutive ten-year sentence "when calculating an appropriate sentence for the non 924c [sic] counts" (ECF No. 140 at 1–2).    Even if it were proper for the court to

consider *Dean* retroactively applicable to Hoehn's case, she has not shown that *Dean* would change the outcome of her case.    First, Hoehn does not point to anything the sentencing judge said or wrote suggesting that he could not take into account the ten-year consecutive sentence on the firearm count in determining her sentence on the drug-related counts, and the record reflects no such statement.    More important, the record shows the district court in fact considered the consecutive sentence in determining Hoehn's total sentence.

AFPD Spaven argued for a downward departure on the drug counts, which carried a mandatory minimum term of ten-years imprisonment and a recommended guidelines range of 188 to 235 months.    More specifically, counsel asked for the "minimum of the minimum mandatory sentence," which was 20 years (10 years on the drug counts followed by 10 years on the firearm count).    In support of her request for a downward departure, AFPD Spaven emphasized that Hoehn had three young children, had a minimal criminal history, was addicted to drugs, and had been in a "toxic" relationship with co-defendant Rainer (*see* ECF No. 103 at 15–17). She additionally argued that even with a downward departure to twenty years—the lowest possible sentence that could be imposed—twenty years was more than Hoehn deserved (*id.*).    The district court rejected all of these arguments, choosing instead

to sentence Hoehn to 211-months imprisonment on the drug counts, followed by ten years on the firearm count.    It is therefore evident that the district court considered the mandatory consecutive ten-year sentence in calculating an appropriate sentence for the drug-related offenses.    He said as much (*see id*. at 19 ("I conclude that this [total] sentence [of 331-months imprisonment], which is within the guideline range, which includes minimum mandatory sentences required in *each* count, is appropriate.    This sentence is sufficient.    A lower sentence would not be sufficient . . . .") (emphasis added)).    In other words, the sentencing judge was aware of the option to sentence Hoehn to lesser time on the drug counts, and aware that she desired such due in large part to the required ten-year consecutive sentence she faced on the firearm count, yet he declined to depart downward or to even sentence Hoehn at the low end of the guideline range.

Similarly, in granting a sentencing reduction pursuant to Amendment 782, the district judge (a different judge than the judge who originally sentenced Hoehn) again made clear that he was aware of the consecutive ten-year sentence when he reduced Hoehn's sentence on the drug counts to 169-months imprisonment (*see* ECF No. 126).    Thus, the *Dean* decision would not change the end result here.

Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT

The second addendum cites *Griffith*, 871 F.3d at 1321 (ECF No. 141). Hoehn's argument is that the quantity of methamphetamine attributed to her was incorrectly calculated. *Griffith* has been incorporated into the court's discussion and analysis above and warrants no further discussion.

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Hoehn has failed to show that any of the claims raised in her motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has she shown that an evidentiary hearing is warranted. Therefore, Hoehn's motion should be denied in its entirety.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84

(2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    Sara Mari Hoehn's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 122) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of February 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT

### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 5:11cr46/MW/EMT; 5:15cv146/MW/EMT