IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

v.                                                          Case No. 5:11cr46-MW/MAL-2

SARA MARI HOEHN,
        Reg. No. 21278-017,

                Defendant.
_____/

### RESPONSE TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE (Doc. 199)

COMES NOW the Defendant and responds as follows to the Government's response to motion for further reduction of her sentence:

### Defendant's Motion (Doc. 199)

1.    The defendant is entitled to further relief under USSG Amendment 821.

The Court graciously granted the Defendant's unopposed motion for Amendment 821 relief.

(Docs. 197, 198).

Since the enactment of USSG Amendment 814 last November, the government has consistently taken the position that USSG § 1B1.13(b)(6) is unconstitutional. This Court has rejected that argument in *United States v. Bruce Theodore Smith, Jr.*, NDFL Case No. 5:07cr48-MW, Doc. 303. A second District Court in this district has ruled section § 1B1.13(b)(6) is valid. (*United States v. Padgett*, NDFL Case No.

2.    The defendant Sarah Mari Hoehn. was sentenced to 331-months imprisonment at the age of 22. In 2014, she received a two-point reduction which reduced her term of imprisonment to 24 years. She has served 2 years over the 10-year threshold of 1B1.13(6). She has moved for a

FILED USDC FLND PN
MAY 24 '24 AM 11:25

sentence reduction under 18 U.S.C. § 3582(c)(1)(A), which allows a reduction for "extraordinary and compelling reasons." Under recently adopted United States Sentencing Guidelines Manual ("Guidelines Manual") § 1B1.13(b)(6), an unusually long sentence that meets specified criteria may be an extraordinary and compelling reason for a sentence reduction. The Defendant meets the specified criteria. The government asserts § 1B1.13(b)(6) is invalid and that a reduction would be inconsistent with the overall sentencing purposes set out in 18 U.S.C. § 3553(a). The government does not, however, deny that the Defendant meets the criteria in the Defendant's unopposed motion for Amendment 821 relief. (Docs. 197, 198).

3. This Court has held § 1B1.13(b)(6) valid and, upon consideration of the § 3553(a) sentencing purposes and all relevant circumstances, should reduce the Defendant's sentence.

4. From the day it took effect, the Sentencing Reform Act has authorized a District Court to reduce a sentence for "extraordinary and compelling reasons," so long as the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A). Congress directed the Sentencing Commission to promulgate "general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)" and to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

5. The only limit was that rehabilitation alone could not be considered extraordinary and compelling.

6. Until 2018, a District Court could grant such a sentence reduction only on motion of the Director of the Bureau of Prisons. The First Step Act changed this, allowing a sentence reduction on the motion of the Director or the defendant. [See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239.]

7. A defendant may file such a motion after exhausting administrative remedies. See 18

8.    Or the defendant may file such a motion without exhausting administrative remedies if more than 30 days have passed since the defendant delivered a request for relief to the warden of the defendant's facility.

9.    The Defendant filed this motion more than 30 days after requesting relief from the warden.

10.    In a series of cases, the government opposed certiorari petitions asking the Supreme Court to resolve the issue. The government asserted that instead, the issue should be addressed by the Sentencing Commission. See Br. for U.S. in Opp'n to Case 5:06-cr-00013-RH-GRJ Document 162 Filed 01/30/24 Page 4 of 18 Page 5 of 18 Case No. 5:06cr13-RH Grant of Cert., Jarvis v. United States, No. 21-568, 2021 WL 5864543, at *12, *17–20 (Dec. 8, 2021); Mem. for U.S. in Opp'n to Grant of Cert., Watford v. United States, No. 21-551, 2021 WL 5983234, at *2 (Dec. 15, 2021); Mem. for U.S. in Opp'n to Grant of Cert., Williams v. United States, No. 21-767, 2022 WL 217947, at *2 (Jan. 24, 2022); Mem. for the U.S. in Opp'n to Grant of Cert., Thacker v. United States, No. 21-877, 2022 WL 467984, at *2 (Feb. 14, 2022); see also Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254, 28257– 59 (May 3, 2023).

11.    The Supreme Court denied the petitions, and the Sentencing Commission took up the issue, citing not just the statute but also the government's position opposing certiorari. See Sentencing Guidelines for United States Courts, 88 Fed. Reg. at 28258. The Commission did what § 994(t) instructed it to do: "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." Amendment 814 includes a nonexhaustive list of examples, one dealing with temporal disparities: (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed

at the time the motion is filed, and after full consideration of the Defendant's individualized circumstances. Guidelines Manual § 1B1.13(b)(6).

12. The Commission simultaneously provided that except as authorized by § 1B1.13(b)(6), a change in the law could not be considered in determining whether there were extraordinary and compelling reasons for a sentence reduction. Id. § 1B1.13(c).

13. The government cannot deny that Congress directed the Commission to address the meaning of extraordinary and compelling. Undeniably, in United States v. Bryant, 996 F.3d 1243 (11th Cir. 2021), the Eleventh Circuit held binding the Sentencing Commission's prior policy statement on this very issue, emphatically explaining that Congress left it to the Sentencing Commission to define "extraordinary and compelling," subject only to the requirement that rehabilitation alone is not enough. Id. at 1249. The court said relying on the Commission promotes uniformity, thus minimizes unwarranted sentence disparity, and that defining these terms is "not a task that the statute.

14. The court said a District Court's job is "simply" to apply the Commission's policy statements and, as required by the statute, consider the § 3553(a) sentencing factors in deciding whether to reduce an eligible defendant's sentence.

15. The Defendant already has served over the 10-year threshold. This Court should find that the Defendant is not a danger to any other person or the community.

16. The Defendant respectfully request for this Honorable Court to reduce her sentence to time served.

17. The Defendant has shown her sentence of 255 months, coupled with being a "victim of abuse," are indeed compelling circumstances.

18. The Defendant does meet the requirements of § 1B1.13(b)(4) to qualify as a "victim of abuse" and is legitimately eligible for relief based on extraordinary and compelling circumstances, pursuant to Amendment 814.

19. The misconduct included Correctional Officer Palomares walking up behind the Defendant, pressing his pelvis into the Defendant's butt, kissing the Defendant behind the ear while rubbing his hands over the Defendant's breasts and her vagina.

20. In March 2023, U.S. District Court Judge Yvonne Gonzalez Rogers labeled the BOP as having a "culture of sexual abuse" when sentencing the former FCI Dublin Warden, whom she said had perpetuated that culture.

21. A federal jury in Oakland found him guilty of three counts of sex with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI.

22. The former Dublin Warden groped three incarcerated women and made them pose naked for photos.

23. Before the former Dublin Warden's sentencing, one of his victims told former Warden Garcia: "You are a predator and a pervert. You are a disgrace to the federal government."

24. In 2022, one-time prison chaplain James Theodore Highhouse was convicted and sentenced to seven years in prison for sexually assaulting a female inmate at FCI Dublin. Highhouse engaged in predatory conduct with at least six women from 2014 to 2019, according to prosecutors. He claimed God had brought them together, quoting the Bible and referencing King David's many wives as justification for his actions.

25. "There is a culture of rot at Dublin," another federal judge declared at Highhouse's sentencing. "It's important the world see this egregious conduct and see this serious penalty."

26.    The lawsuit the Defendant brought against the Bureau of Prisons claimed that FCI Coleman failed to prevent, detect and investigate sexual abuse, placing those being held at the prison at substantial risk of sexual assault.

27.    The Defendant's lawsuit was an act of bravery against guards who continued to sexually harass, grope and assault her.

28.    Allegations of sexual assault throughout the BOP has stretched back to the 1990s. Numerous employees were previously convicted of sexual abuse of inmates. Those incidents, along with civil litigation, forced the inclusion of the "victim of abuse" provision in the reforms.

29.    Ever since the Defendant's sentence commenced in the early 2010s, countless BOP employees were removed for sexual abuse, including one who videotaped himself having sex with inmates and stored tapes in a prison locker — but none were arrested.

30.    The Government cannot deny that the Defendant was subjected to the same "culture of sexual abuse."

**Pray for Relief**

As a Correctional Officer Palomares controlled every aspect of the Defendant's life. Palomares controlled where the Defendant slept, who she could talk to, and where she worked. Palomares had the power to protect the Defendant or punish her. Palomares could demand sexual favors or send the Defendant to solitary confinement where the Defendant would be confined to tiny cells, like dungeons. Palomares made the Defendant's life a living hell.  Palomares used this power to repeatedly coerce, manipulate, and sexually abuse and harass the Defendant under his care and protection. After abusing the Defendant, Palomares took steps to ensure the Defendant's silence by using his position of power to deter her from coming forward. When confronted by the Special Investigative Agent about his abuse, Palomares could not lie. After leaving the BOP, Palomares did lie to become a state Correctional Officer, and thankfully he was held accountable

Nevertheless, even though the BOP settled the Defendant's civil case, Government has continued to show no remorse and has refused to accept any responsibility for its employee's actions.

Even though the Government chose not to prosecute Palomares, he was convicted by God when he lost his position of power. God took away his job for sexual abuse of ward in violation of the Defendant's human rights. The abusive sexual contact was definitely a crime against humanity. Palomares' wrongdoings were extraordinarily serious. Because the Government fails to acknowledge the seriousness of Palomares' immoral conduct, the Defendant respectfully moves this Court to consider the fact that the BOP settled the civil suit, which was a significant departure from the way the BOP does business, but it was a necessary one.

The BOP settled the case because Palomares had power over the Defendant, and he repeatedly used that power to systematically manipulate and abuse the Defendant. Palomares' tactics followed a familiar pattern. He flattered the Defendant. He called the Defendant gorgeous, made the Defendant feel inferior, and made the Defendant live in fear. Once Palomares had instilled fear in the Defendant, he forced the Defendant to let him touch her for his own perverse sexual pleasure.

Due to the nature of Palomares' reputation at FCI Coleman, the Defendant was powerless to report her abuse. In violation of BOP policy, rogue officers, like Palomares, were often notified when an inmate made a complaint under the Prison Rape Elimination Act (PREA), the very act designed to prevent Palomares' abuse. Palomares' evil sexual misconduct with respect to the Defendant was the basis for the settlement. The Government cannot deny that Palomares took indecent liberties with the Defendant out of the sight of surveillance cameras – i.e. grabbing her breasts, pulling her pants down, and putting his fingers in her vagina.

Even now, despite the unprecedented civil settlement, the Government is attempting to re-traumatize the Defendant by not conceding that the sexual abuse occured. Palomares participated

in a Culture of Abuse inside the BOP. Not only did Palomares himself sexually abuse the Defendant under his care, but in his role as Correctional Officer, Palomares became a sexual predator.

Respectfully submitted,

**SARA MARI HOEHN**

May 20, 2024

# CERTIFICATE OF SERVICE

I, Sara Mari Hoehn hereby certify that on this 20th day of May,

2024, the enclosed motion for relief pursuant to 18 U.S.C. 3582, was mailed to

the following parties:

United States District Court Clerk
1 N Palafox St,
Pensacola, FL 32502

United States Attorney's Office
1001 E Highway 98
Panama City, FL 32401

Signed this 20th day of May 2024.

**SARA MARI HOEHN**



Sara Mari Hoehn
Reg. No. 21278-017
FCI Marianna
P.O. Box 7007
Marianna, FL
32447

United States District
Court Clerk
IN Palafox St
Pensacola, FL 32502